** Summary ** PROSPECTIVE VOTER NOT REQUIRED TO MEET CERTAIN RESIDENCY REQUIREMENTS The durational residency requirements of six (6) months in the State, two (2) months in the county and twenty (20) days in the precinct, which are found in Article III, Section 1 of the Oklahoma Constitution are in violation of the Fourteenth Amendment of the United States Constitution under the United States Supreme Court decision of Dunn v. Blumstein, No. 70-13, decided March 21, 1972. A prospective voter who is a bona fide resident of Oklahoma is eligible to register if he complies with all other aspects of Article III, Section 1 of the Oklahoma Constitution. The Attorney General has considered your request for an opinion with respect to the constitutionality of the durational residency requirements found in Section 1 of Article III of the Oklahoma Constitution. In your letter you referred to the recent United States Supreme Court decision issued march 21, 1972, as possibly affecting the Oklahoma law. Specifically, your questions are: "1. Are the durational residency requirements (six (6) months in the State, two (2) months in the county and twenty (20) days in the precinct), found in Section 1, Article III of the Oklahoma Constitution now invalid? "2. If so, is a prospective voter now eligible to be registered as soon as he complies with all other aspects of Section 1, Article III, including the establishment of residency?" Article III, Section 1 of the Oklahoma Constitution as amended in 1971 provides in part: "Qualified electors of this State shall be citizens of the United States, citizens of the State, including persons of Indian descent (native of the United States), who are over the age of eighteen (18) years and who have resided in the State at least six (6) months, in the county two (2) months, and in the election precinct twenty (20) days next preceding the election at which such elector offers to vote. . . ." The United States Supreme Court decision of Dunn v. Blumstein, No. 70-13, decided March 21, 1972, arose from an interpretation of the Tennessee durational residency requirements for voter qualifications. The Tennessee Constitution as well as portions of the Tennessee Code are similar to the provisions of the Oklahoma law, insofar as establishing durational residency requirements. The Tennessee Constitution, Article IV, Section 1, provided that a resident of the State for twelve (12) months, and of the county wherein such person may offer to vote for three (3) months, next preceding the date of election would be qualified to the right of suffrage. The United States Supreme Court in discussing the Tennessee constitutional provisions and statutes held that the durational residency requirements were violative of the equal protection clause of the Fourteenth Amendment as they were not necessary to further compelling State interests. The United States Supreme Court held in Dunn, supra, the following: "Durational residence laws penalize those persons who have traveled from one place to another to establish a new residence during the qualifying period. Such law divides residents into two classes, old residents and new residents, and discriminate against the latter to the extent of totally denying them the opportunity to vote. The constitutional question presented is whether the equal protection clause of the Fourteenth Amendment permits a State to discriminate in this way among its citizens. . . "Obviously, durational residence laws single out the class of bona fide state and county residents who have recently exercised this constitutionally protected right (the freedom to travel throughout the United States), and penalize such travelers directly." The Court concluded: "In sum, durational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the state can demonstrate such laws 'are necessary to promote a compelling governmental interest.' " (Court's emphasis). The Supreme Court in striking down durational residency requirements did not invalidate a State's right to prescribe bona fide residence requirements as long as they are appropriately defined and uniformly applied. In footnote 13 of the Dunn decision, the Court stated: "However . . . States may show an overriding interest in imposing an appropriate bona fide residence requirement on would-be voters. One who travels out of the State may no longer be a bona fide resident, and may not be allowed to vote in the old State. Similarly, one who travels to a new State may, in some cases, not establish bona fide residence and may be ineligible to vote in the new State. Nothing said today is meant to cast doubt on the validity of appropriately defined and uniformly applied bona fide residence requirements." Although the Dunn decision struck down durational residency requirements, the Supreme Court indicated that some time is necessary to handle the administrative task of registering new voters. The Court held that it was permissible for a State to prescribe a cut-off date after which no new registration of voters would be accepted prior to an election. The State of Tennessee by statute provided for a cut-off point of registration thirty (30) days before an election, and the Supreme Court noted that this should be a sufficient period of time to take care of the administrative task of registering new voters. The Court stated in Dunn, supra, as follows: "It is sufficient to note here that thirty (30) days appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud and a year, or three (3) months, too much. This was the judgment of Congress in the context of presidential elections. And, on the basis of the statutory scheme before us, it is almost surely the judgment of the Tennessee lawmakers as well." It is important to note that the thirty (30) days referred to in the Dunn decision was derived from the cut-off time prescribed by Tennessee Statute, and would not necessarily be a time uniformly applied throughout the States. In Oklahoma, the cut-off period for registering voters is found in 26 O.S. 93.3 [26-93.3] (1971) which was amended by the 1972 Legislature in Senate Bill No. 487 to provide as follows: ". . . The Secretary of each county election board is herewith given authority to register electors and transfer or reinstate their registration at any place within the county at any time except on Sundays, legal holidays, election days, and the seven (7) days immediately preceding and the three (3) days immediately following an election; . . ." In Oklahoma therefore by existing statutory law in light of the Dunn decision, persons establishing a bona fide residence within the State could register at any time up to seven (7) days prior to an election. Therefore, it is the opinion of the Attorney General that the answer to your first question is in the affirmative. The durational residency requirements of six (6) months in the State, two (2) months in the county and twenty (20) days in the precinct, which are found in Article III, Section 1 of the Oklahoma Constitution are in violation of the Fourteenth Amendment of the United States Constitution under the United States Supreme Court decision of Dunn v. Blumstein. It is the opinion of the Attorney General that the answer to your second question is in the affirmative. A prospective voter who is a bona fide resident of Oklahoma is eligible to register if he complies with all other aspects of Article III, Section 1
of the Oklahoma Constitution. (Paul C. Duncan)